872        SUPREME COURT OF FLORIDA.

WYLLY-GABBETT COMPANY, A CORPORATION, GEORGE W. OW-
ENS, WYLLY LUMBER COMPANY, A CORPORATION, AND T. S.
WYLLY, JR., APPELLANTS, V. H. A. WILLIAMS, L. C. HES-
TER AND STRINGFELLOW & DOTY COMPANY, A CORPORATION,
APPELLEES.

MORTGAGE—INSOLVENT DEBTOR MAY MORTGAGE HIS
PROPERTY TO SECURE DEBTS—ASSIGNMENTS FOR
BENEFIT OF CREDITORS.

1. An insolvent debtor may in good faith mortgage the whole
of his property to secure the payment of one or more *bona
fide* debts due to preferred creditors;. and such a mort-
gaage is not void as being an assignment for the benefit
of creditors attempting preferences under the provisions
of Section 2307 of the Florida Revised Statutes of 1892,
if at the time it is made the debtor in good faith *intended*
it to be only a *security* for the debt or debts therein pro-
vided for,. and had no design or intention at the time of
thereby absolutely surrendering the dominion, control
and ownership over the property, or of making a general
assignment for the benefit of creditors generally, or of
evading or defeating the statute forbidding preferences
in voluntary assignments for the benefit of creditors.

2. An instrument must be considered a mortgage if, taken
alone or in connection with surrounding facts, it appears
to have been given as a security; the mere absence of
terms of defeasance cannot determine whether it is a
mortgage or not.

3. A clause in a mortgage made by a corporation conducting
a saw mill and lumber business, that covers all the lands,
machinery, live stock, timber carts and a railroad ope-
rated in connection with such business, empowering the
mortgagee to sell wornout and damaged machinery, ani-
mals, carts, rolling stock, &c., and to replace the same

with the proceeds, does not render such mortgage fraudulent or void, as it might do in the case of a mortgage of ordinary goods.

This case was decided by Division B.

Appeal from the Circuit Court for Levy County.

## STATEMENT.

The Wylly-Gabbett Company, a corporation of the state of Georgia, empowered by its charter of incorporation to engage in the manufacture and sale of lumber and to own, buy and sell timber and timber lands, and to construct, own and operate saw mills and railways in connection therewith, and to mortgage its property, on the 8th day of August, 1904, executed the following instrument to George W. Owens and C. L. Heller, as trustees, which was promptly filed for record and duly recorded in the office of the clerk of the circuit court of Levy county, Florida, where the property covered thereby was located:

"*This indenture*, dated the eighth (8th) day of August, A. D. 1904, between the Wylly-Gabbett Company, a corporation organized and existing under the laws of the state of Georgia, hereinafter called the "Company," party of the first part, and George W. Owens and C. L. Heller, of the city of Savannah, county of Chatham, state of Georgia, hereinafter called the "trustee" (which word shall include any successor in the office of trustee), parties of the second part; witnesseth: That whereas, the company is indebted to the Germania Bank, of Savannah, Georgia, in the sum of twenty-three thousand three hundred and

thirty-three dollars and thirty-three cents ($23,333,33), to the Merchants National Bank of Savannah, Georgia, in the sum of twenty-two thousand five hundred dollars ($22,-500.00), and to the Savannah Trust Company, of Savannah, Georgia, in the sum of fourteen thousand one hundred dollars ($14,100.00), and the Atlantic National Bank of Jacksonville, Florida, in the sum of eight thousand one hundred and fifty-two dollars ($8,152.00), evidenced by its promissory notes of even date herewith, payable to the order of said banks, respectively, six (6) months after date; and,

*Whereas,* The company will become further indebted to all, some or either of said banks, or to other person or persons, corporation or corporations, on account of loans or advances made to it, amounting to twenty thousand seven hundred and twelve dollars and forty-seven cents ($20,712.47), and may become further indebted to person or persons, corporation or corporations for loans or advances made to it hereafter; and,

*Whereas,* the company is desirous of securing the payment of the present and any future indebtedness to said banks and to the other person or persons and corporation or corporations making advances hereunder, by a mortgage of the properties and premises hereinafter described and conveyed; and,

*Whereas,* these presents have been submitted to the stockholders of the Company and also to the directors thereof, and have been by them authorized and approved, and all conditions necessary to authorize the execution hereof have been complied with;

*Now, therefore,* The company, in consideration of the premises and the sum of one dollar to it in hand paid by

the trustee, the receipt whereof is hereby acknowledged, and to secure the payment of the principal and interest of the present and future indebtedness secured hereby, according to the terms and tenor of the promissory notes of the Company now or hereafter held, doth hereby grant, bargain convey, assign, transfer, confirm, set over and deliver unto the trustee all the following properties, to wit:

All and singular the properties of the Company, real, personal and mixed, situate, lying and being in the county of Levy in the state of Florida, including the following, to wit:

A. All those certain tracts or parcels of land situate, lying and being in the county of Levy, state of Florida, containing forty-one thousand three hundred and nineteen and five-one hundredths (41,319.05) acres, more or less, together with the improvements, rights, members and appurtenances thereto belonging or in anywise appertaining, conveyed by the Savannah Trust Company, trustee, to Wylly-Gabbett Company, by deed dated February 16th, 1903, and recorded in the office of the clerk of the circuit court in and for the county of Levy, state of Florida, in book 'U,' pages 686 et seq., to which deed, so recorded, reference is hereby made for full description.

Excepting and reserving, however. the right of the McKinnon-Young Company, a corporation, and its successors and assigns, to turpentine privileges in the pine timber upon said lands, more particularly stated and set forth in the deed from McKinnon-Young Company to Wylly & Gabbett, dated January 19th, 1903, covering said lands, to which deed and the record thereof in book "U." pages 676

*et seq.,* of records of Levy county, Florida, reference is hereby made.

B.   Also the real properties conveyed to Wylly-Gabbett Company by Jonathan B. Bunce, surviving trustee, by deed dated March 7th, 1903, and recorded in book 'U,' page 793; and by McKinnon-Young Company by deed dated March 6th, 1903, and recorded in book 'U,' page 715; and by William D. Mooney, by deed dated July 30th, 1903, and recorded in book 'V,' pages 163 *et seq.;* the reference hereby made being to deed books of record of Levy county, Florida; to which said deeds, so recorded, reference is made for full description.

C.   Also all the properties of every nature and character described in and covered by the contract and mortgages between B. B. Stokes & Brother and the Company, dated March 10th, 1903, and July 24, 1903, and recorded, respectively, in book 'K,' of mortgages, pages 508 to 520, inclusive, and pages 534 *et seq.,* in the office of the clerk of the circuit court in and for said county of Levy, state of Florida; which properties were conveyed by said B. B. Stokes & Brother to the company by deed dated the 27th day of July, 1904; to which contract and mortgages, recorded as aforesaid, and to which deed, as recorded, reference is hereby made for full description.

D.   Also all the properties of every nature and character described in and covered by the contract and mortgages between Coleman & Burch and the company, dated April 9th, 1903, and July 25th, 1903, and recorded, respectively, in book 'K' of mortgages, pages 520 to 532, inclusive and pages 538 to 540, inclusive, in the office of the clerk of the circuit court in and for said county of Levy, State of Florida; which properties were conveyed by said Cole-

man & Burch to the company by deed dated the 27th day of July, A. D. 1904; to which contract and mortgages, recorded as aforesaid, and to which deed, as recorded, reference is hereby made for full description.

E.    Also all the properties of every nature and character described in and conveyed by the contract and mortgages between Statesboro Lumber Company and the company, dated March 10th, 1904, and July 25th, 1903, and recorded respectively, in book 'K,' of Mortgages, pages 497 to 508 inclusive, and pages 536 to 538 inclusive, in the office of the clerk of the circuit court in and for said county of Levy, state of Florida; which properties were conveyed by the said Statesboro Lumber Company to the company, by deed dated the 27th day of July, 1904; to which contract and mortgages, recorded as aforesaid, and to which deed, as recorded, reference is hereby made for full description.

F.    Also all the right, title and interest of the company in and to the steel rails, plates, bolts, nuts and spikes conditionally conveyed by Reppard, Snedeker & Company to Wylly-Gabbett Company, by instrument dated June 29th, 1903, and recorded in the office of the clerk of the circuit court of Levy county, Florida, in book 'K,' of Mortgages, folios 543 to 547, inclusive; to which said instrument, and the record thereof, reference is hereby made for full description of said properties; and also the right, title and interest of the company in and to the steel rails, plates, bolts, nuts, spikes and other property conditionally conveyed by Reppard, Snedeker & Company to Wylly-Gabbett Company, by instrument dated June 29th, 1903, and recorded in the office of the clerk of the circuit court of Levy county, Florida, in book 'K,' of mortgages, folios

547 to 551, inclusive; to which said instrument and the record thereof, reference is hereby made for full description of said properties; also all the right, title and interest of the company in and to the steel rails, plates, bars, spikes, bolts, switch-stands, points, frogs and other properties conditionally conveyed by Savannah and Statesboro Railway Company to Wylly-Gabbett Company, by instrument dated August 29th, 1903, and recorded in the office of the clerk of the circuit court of Levy county, Florida, in book 'V,' of deeds, folios 480 to 482, inclusive; to which said instrument, and the record thereof, reference is hereby made for full description of said properties.

The description of the properties, real, personal and mixed, and the instruments hereinbefore referred to being hereby made part and parcel of this instrument to the same extent and as fully and completely as if said descriptions were incorporated herein in detail.

A portion of the properties hereby conveyed, to wit: The mules, harness, log carts, etc., are subject to contract of conditional sale made by the company to S. C. Humphreys, and the purchase money as paid will be turned over to the trustee for pro rata distribution to all the beneficiaries hereunder.

*To have and to hold* the said properties with their appurtenances, and all other proprieties, present and future acquired, appertaining to or used in connection with the mill plants of the company in Levy county, Florida, unto the parties of the second part as trustees, and to their successors and assigns, forever.

*But in trust, nevertheless,* for the equal and pro rata use, benefit and security of the corporations hereinbefore named, or their successors or assigns, and of such other

VOL. 53, JANUARY TERM, 1907. 879

Wylly-Gabbett Co. et al. v. Williams et al.—Statement of Case.

person or persons, corporation or corporations as may hold any of the promissory notes evidencing indebtedness secured hereby, without preference to any or either of them over other for any reason, and upon the trusts hereinafter set forth; each party covenanting for itself or himself and not for the other in respect of the matters and things to be done or avoided, or permitted to be done by them, respectively, that is to say:

First: The promissory notes of the company representing its present indebtedness to said banks and secured hereby, aggregating sixty-eight thousand and eighty-five dollars and thirty-three cents ($68,085.33), shall be executed and delivered by the company to the trustee for certification, and the trustee shall certify and deliver the same to the respective banks, upon the execution, delivery and filing of this mortgage for record.

Second: The trustee will further certify and deliver to such person or persons, corporation or corporations as may be designated by the company the promissory notes of the company covering loans and advances hereunder aggregating the sum of twenty thousand seven hundred and twelve dollars and forty-seven cents ($20,712.47), and no further notes, excepting only such as may be in renewal in whole or in part of one or more of the notes hereinbefore provided for, shall be certified by the trustees without the written consent thereto of all the beneficiaries hereunder.

Third: The aggregate of the principal sums of the promissory notes issued hereunder and certified by the trustees, representing and evidencing the present and any future indebtedness secured hereby, shall not exceed the sum of $100,000.00.

Fourth:    There shall be no obligation whatever upon any or either of said banks to make any further or additional loans or advances to the company, but any or either of said banks may, at its option, make additional loans or loan to said company upon promissory note or notes issued as hereinbefore provided and certified by the trustee as falling within the aggregate of $100,000.00 secured hereby.

Fifth:    The provisions of this instrument shall apply, and extend to, and this mortgage shall secure, any and all promissory notes of the company certified by the trustee and delivered to either of said banks, its successors or assigns, and to any other person or persons, corporation or corporations for other advances, whether the same be in first or subsequent renewal of the whole or any portion of the principal or interest of one of the original notes hereinbefore recited, or whether it be an original not for additional advances or loans hereunder, or whether it be in first or subsequent renewal of the whole or any portion of the principal or interest of one or more of the notes given for such additional advances or loans.

Sixth:    All the rights and benefits of any beneficiary hereunder may be transferred to its, his or their successor or successors, heirs, executors, administrators or assigns, and such successor or successors or heirs, executors, administrators or assigns will stand in the place of and enjoy all the rights, benefits and privileges secured hereby to the person or corporation by whom such transfer or assignment may be made; provided, the trustees hereunder receives written notice of said transfer or assignment together with the names of the parties by whom

and to whom, and the amount of the indebtedness, so transferred and assigned.

Seventh: The company covenants with the trustee that it will at all times keep the mill plants, machinery and personal properties covered by this mortgage insured against loss or damage by fire, in such an amount as may be deemed reasonable by the company; which insurance shall be made payable and the policies thereof delivered to said trustee. All moneys received by the trustee for any insurance as aforesaid shall be held as security for the payment of the principal and interest of the indebtedness secured hereby and shall be applied to the pro rata payment thereof; provided, however, that in case the company shall within six (6) months from the date hereof reconstruct, replace or repair the properties so damaged or destroyed, or make other permanent improvements upon the mortgaged property, then the trustee shall pay over to the company in installments from time to time, such portions of said insurance money as shall equal the cost of such re-construction, replacements, repairs or improvements, as shown by vouchers submitted by the company to the trustee, which said vouchers shall be sufficient authority to the trustee to make such payments; and duly authenticated duplicates of said vouchers shall be furnished the trustee upon his request. Any portion of such insurance money not paid over to the company for reconstruction, replacements, repairs or improvements as hereinbefore provided, shall be applied pro rata to the payment of the indebtedness due the beneficiaries hereunder.

In case said company fails at any time to keep said properties insured to an amount deemed sufficient by the

56—SC

trustee, the trustee may cause such insurance to be placed thereon; and in such event, the company shall repay, upon demand, to the trustee the amount of premiums expended by him together with interest thereon at the rate of 7 per cent. per annum from the time of its expenditure by the trustee, and the amount of such expenditures and interest shall constitute a part of the indebtedness secured by these presents. The trustee shall not be responsible for the amount of the insurance, or its insufficiency, or be required to place additional insurance on said properties, unless requested so to do by the beneficiaries hereunder.

Eighth: Until the company shall make default in the payment of principal or interest due any or either of the beneficiaries hereunder, it shall be suffered and permitted to possess, manage, operate, use and enjoy all the properties covered hereby for the purposes of the company, and to receive and discharge all income, revenue and profits therefrom.

The company may, at any time before default, without the trustee's consent, sell or otherwise dispose of any of the mortgaged property which may have become worn or damaged or otherwise unsuitable to be used in the conduct of its business, provided that property equivalent in value to the property thus sold or disposed of be substituted therefor, which substituted property shall immediately become subject to the lien and provisions of this instrument; and provided, further, that the company shall not, without the trustee's consent, sell or dispose of at any time property exceeding in value the sum of $1000.00, it being understood and agreed, however, that these provisions have no relation to products from the lands or timber thereon, through the mills or otherwise,

handled ·and sold by the company in the ordinary course of its business.

All renewals of new materials or properties acquired by the company shall be covered by and be subject to this· mortgage.

Ninth: The company covenants with the trustees that it will pay all valid taxes, assessments and public charges of whatever nature to which the properties may, from time to time, become subject, or which, under any present or future laws, may be levied upon the evidences of the indebtedness secured hereby; and it further covenants and agrees that it will keep the mortgaged properties· free from any lien or encumbrances which are or which may become entitled to priority over this mortgage.

In the event the company fails to pay any such taxes, assessments or other public charges within thirty (30) days after the same become due or payable, the trustee shall have the right, at his option, if reasonably indemnified and requested in writing by the beneficiaries hereunder so to do, to pay such taxes, assessments or public charges, and thereupon said company shall pay the amount thereof to the trustee upon demand, with the interest at the rate of seven (7) per cent. per annum from the time that same are paid by the trustee, and any such payments made by the trustee shall constitute. a part of the indebtedness hereby secured.

Tenth: The company further covenants with the trustee that it will, from time to time, upon his request, execute and deliver such further conveyances or transfers and perform such other acts as the trustee may deem necessary or advisable, for the purpose of perfecting the lien and security of this mortgage upon the property intended

to be covered hereby, whether now owned or hereafter acquired, and that it will, from time to time, upon request of the trustee, furnish him with an inventory and description of the properties from time to time covered by this mortgage.

Eleventh: In case the company shall default in the payment of either the principal or interest, or any part thereof, as the same shall become due and payable, to either of the beneficiaries hereunder, according to the tenor and effect of the promissory note or notes held, and such default shall continue for thirty days after notice thereof shall have been given by the trustee to the company in writing; or,

In case the company fails to keep the mortgaged property insured as hereinbefore provided, or shall fail to repay th cost thereof with interest to the trustee, upon demand, and such failure shall continue for thirty days after written notice thereof shall have been given by the trustee to the company; or,

In case the company shall fail to fully keep and perform any or either of the covenants by it herein undertaken to be performed and such failure shall continue for a period of thirty days after written notice thereof by the trustee;

Then, and in either of such cases, upon the expiration of the period mentioned, the trustee may, upon written request of the beneficiaries hereunder, and upon being furnished with funds sufficient in his opinion for that purpose, proceed to the foreclosure of this mortgage in such manner and in such court as he thinks proper; in which event, upon the commencement of proceedings for foreclosure, whether at law or in equity, the trustee shall be entitled to the appointment of a receiver without

further notice to the company and shall be entitled to the possession of all the properties covered by this mortgage. And in case of suit or action commenced in any court to recover any sum hereby secured, the reasonable fees of the attorney or attorneys representing the trustee or beneficiaries hereunder in such action shall be taxed as a part of the costs therein and included in any judgment rendered, and shall be deemed due and payable at the time of the commencement of such suit or action; or,

The trustee may, after default as aforesaid, enter and take possession of the properties and privileges then subject to these presents, and thereupon said trustee shall be entitled, without let or hindrance from said company, through such officers or agents as he may appoint, to hold, manage, enjoy and operate said mortgaged properties and to receive revenues, issues and profits thereof for the benefit of the beneficiaries hereunder, and to make needful repairs, alterations or improvements upon the mortgaged properties, and in general to carry on and conduct the business theretofore carried on by the company for the benefit of the beneficiaries hereunder until the indebtedness due them, together with interest thereon, shall have been paid in full, or until all defaults shall have been made good, or until the properties be sold by the trustee as hereinbefore provided; or, until this mortgage be foreclosed by the trustee as hereinbefore provided; or,

The trustee may, after default by the company as aforesaid, either with or without previously taking possession of said properties, sell the same at public auction to the highest bidder, at such time and place in the city of Savannah as he may designate, after first giving sixty (60) days' written notice to the company of the time and place

and term of sale, and after publishing notice thereof not less than once a week for four weeks in one or more newspapers of general circulation in the city of Savannah; which notices to the company and by publication may be given contemporaneously. The trustee shall have the right to adjourn such sale or sales from time to time in his discretion, giving what he shall deem reasonable notice of such adjournment and of the time and place to which the same may be adjourned, and shall have the right, in his discretion, to sell in one or several parcels, and to make successive sales of portions of the mortgaged properties. The trustee is further authorized and empowered, and is hereby constituted the attorney irrevocable of the company, in the event of the sale or sales as aforesaid, to make, execute and deliver in his own name or in the name and under the seal of the company such deeds, bills of sale or other instruments in writing, and to perform such acts and things as may be necessary or proper to vest in the purchaser or purchasers at said sale or sales a valid title to the properties sold, free from any right or redemption by the company; it hereby ratifying every such act or deed as the trustee, either in his own name or as such attorney shall lawfully do in the premises; and such sale or sales shall be a perpetual bar, both in law and in equity, against said company and all persons or corporations claiming by, through or under it.

In the event of sale or sales, whether under the power of sale herein contained or in pursuance of foreclosure proceedings or otherwise, it shall be lawful for the trustee, or for any one or more of the beneficiaries hereunder to purchase the whole or any portion of the properties so sold, and no purchaser at any such sale, excepting only,

the trustee, shall be obliged to see to the application of the purchase money.

Twelfth: The company covenants that it will not at any time insist upon, or plead, or in any manner whatever claim or take advantage of, any stay or extension law, nor at any time in force, and that it will not claim, take or insist upon any benefit or advantage from any law now or hereafter of force providing for the valuation or appraisement of the mortgaged properties, or any part thereof, prior to any sale or sales thereof made in pursuance of the provisions herein contained or under decree of court of competent jurisdiction; nor after such sale or sales will it claim or exercise any right under any statute to redeem the property so sold or any part thereof, and it hereby expressly waives all benefits or advantages of any such law or laws, and it agrees that it will not hinder, delay or impede the execution of any power herein granted to the trustee, but that it will suffer and permit the execution of every such power as though no such law or laws were in force.

Thirteenth: The proceeds received by the trustee from the management and operation of the mortgaged properties in the event he shall take possession thereof, and also the proceeds of any sale or sales hereunder, whether by the power herein conferred, foreclosure or otherwise, shall be applied as follows, to wit:

(a)  To the reimbursement of the trustee for all costs, charges and expenses incurred by him in connection with the management or operation of the mortgaged premises, or in connection with said sale or foreclosure, including reasonable compensation to the trustee for his own services and those of his counsel, and for all sums which may

be expended by the trustee for insurance, taxes or other charges attaching to the mortgaged properties to date of sale; and,

(b)   To the pro rata payment of the beneficiaries hereunder; the amount due each to be determined by adding the interest according to each beneficiary to date of payment to the principal due such beneficiary; and,

(c)   After the satisfaction of all charges and the payment of all the indebtedness secured hereby, including principal and interest, the surplus of such proceeds, if any, shall be paid over to the company.

Fourteenth: In the event of any default by the company as hereinbefore provided, the trustee may, upon the written request of all the beneficiaries hereunder, declare all the indebtedness hereby secured to be due and payable, whether the same be then due according to the notes evidencing it or not, and the same shall thereupon be and become immediately due and payable.

Fifteenth: No recourse under any obligation, covenant or agreement of this indenture, or because of the creation of any indebtedness hereby secured, shall be had against any stockholder, director or officer of the company, either directly or through the company, or by the enforcement of any assessment, or by any legal or equitable proceeding, by virtue of any statute or otherwise; it being expressly understood that this mortgage and the obligations hereby secured are solely corporate obligations, and that no personal liability whatever shall attach to or be incurred by the stockholders, directors and officers of the company, or any of them, because of the creation of the indebtedness hereby authorized or by reason of the obligations, covenants or agreements contained in this agreement and

mortgage; and that any and all personal liability of every name and nature, either at common law or in equity, or by statute, or any such stockholder, director or officer, and all rights and claims against said stockholders, directors and officers, or any of them, are hereby expressly waived as a condition of and as consideration for the execution of this mortgage.

Sixteenth: The trustee shall not be answerable for the default or misconduct of any agent or attorney appointed by him in pursunance hereof, nor for the consequences of any act on his part in connection with this trust, except such as may result from wilful misconduct and gross negligence, and the trustee shall not be personally liable for any debts contracted by him or for damage to persons or property or for salaries, or for non-fulfillment of any contract accruing during any period wherein the trustee shall manage the trust property or premises upon entry or surrender as aforesaid; it being the intention hereof that all acts of the trustee in the premises are and are to be for the sole account and risk of the trust estate; nor shall the trustee be required to take notice of any default hereunder except as herinbefore provided.

The trustee and his agent, attorneys and counsel shall be entitled to reasonable compensation for all services properly rendered in pursuance hereof, or in connection with the trusts hereby created, and the trustee is hereby declared to be entitled to a lien therefor upon the mortgaged premises and the proceeds thereof.

Seventeenth: The execution of this instrument by either George W. Owens or C. L. Heller, parties of the second part will render it effective in all particulars, and

either of said persons can, without being joined by the other therein, do and perform any and all acts and things to be done and performed by the trustees hereunder, with the same force and effect as if both of said parties unite therein; and either of said parties may be removed at any time by an instrument in writing signed by the beneficiaries hereunder; and either or both of said parties may resign by an instrument in writing, a copy of which shall be mailed to the company and to each of and every of said beneficiaries; and in case of the removal, resignation, incapacity or death of one of said persons it shall not be necessary to fill his place, but the other and remaining person shall do and perform any and all acts and things required of, or for which authority is hereby given to the trustee hereunder; in the event the office of trustee shall in any manner become and be vacant, one or more persons may be appointed to fill such vacancy by an instrument in writing executed by the beneficiaries hereunder, who shall thereupon become vested with all the rights, properties and duties and trusts of the trustee with like effect as if named herein.

Eighteenth: The company covenants with the trustee that the mortgaged property, and all and every part thereof, is free and clear from all encumbrances of every nature having priority or which may become entitled to priority over these presents, except as hereinbefore stated.

Nineteenth: The company further covenants with the trustee that it has good title to, and full power and lawful authority to sell and convey, the property hereby conveyed or purporting to be conveyed, and that it will warrant and defend the lien and interests of the trustee therein under this mortgage against the lawful claims of all and every

person or persons, corporation or corporations claiming or to claim the same, except as hereinbefore stated.

Twentieth : The trustee, through one or both of the parties of the second part, joins in the execution of this indenture in signification of the acceptance of the trusts herein set forth and upon the terms thereof.

In witness whereof, the party of the first part has caused its corporate name to be hereunto signed by its president and its corporate seal to be hereunto attached, duly attested by its secretary, and one of the parties of the second part has hereunto set his hand and seal, the day and year first above written.

Wylly-Gabbett Company,<br>By T. S. Wylly, Jr.,

Signed, sealed and delivered                          President.
by Wylly-Gabbett Company   Attest: J. C. Lovelace,
in presence of:                                      Secretary.
    W. V. Davis,                (Corporate Seal.)
    E. L. Douglass.


Signed, sealed and delivered
by C. L. Heller in presence      (Seal.)   C. L. Heller.
of:
    W. V. Davis,
    E. L. Douglass."


C. L. Heller, one of the trustees named therein, subsequently before any action was taken under said instrument, resigned his trusteeship thereunder.

On the 5th day of May, 1905, George W. Owens, as trustee, filed the following bill in the circuit court of Levy county, Florida, in equity, for the foreclosure of said in-

strument, and for the appointment of a receiver therefor, to wit:

"In the Circuit Court of the Eighth Judicial Circuit of the State of Florida, in and for Levy County, in Chancery.

George W. Owens, as Trustee, &c., Complainant, vs. The Wylly-Gabbett Company, Defendant.

To the Honorable J. T. Wills, Judge of the Circuit Court of the Eighth Judicial Circuit of the State of Florida, in and for Levy County, in Chancery, sitting:

Your orator, George W. Owens, a citizen and resident of the city of Savannah, county of Chatham and state of Georgia, as trustee of the Germania Bank, a corporation under the laws of the state of Georgia, with its principal office in the city of Savannah, Georgia; the Merchants National Bank, a corporation under the laws of the United States, with its principal office in the city of Savannah, Georgia; the Savannah Trust Company, a corporation under the laws of the state of Georgia, with its principal office in the city of Savannah, Georgia; the Atlantic National Bank of Jacksonville, a corporation under the laws of the United States, with its principal office in the city of Jacksonville, Florida; the Southern Investment Company, a corporation having its principal office and place of business in the city of Baltimore, state of Maryland, and the estate of Sydney Shepard, deceased, late of the city of New York, in the state of New York, brings this his bill of complaint against the Wylly-Gabbett Company, a corporation chartered, organized and existing under the laws of the state of Georgia, having its principal office and place of business in the town of Rosewood, Florida, in the county of Levy, state of Florida,

and thereupon your orator complains and shows unto this honorable court as follows, to wit:

1st. That on the 8th day of August, 1904, the said defendant being then and there justly indebted to the several beneficiaries above named in divers sums of money, to secure unto them payment thereof, executed its eight several promissory notes, copies of which are attached to this bill of complaint and made a part hereof, and reference to the same is prayed as if they were set forth at length herein; whereby said defendant promised to pay, six months after date, with interest, at the rate of eight per cent. per annum, to said Germania Bank, $23,333.33; to the Merchants National Bank of Savannah, $22,500; to the Savannah Trust Company, $14,100; to the Atlantic National Bank of Jacksonville, $8,152.00; to the Southern Investment Company, $2,212.47; to the Southern Investment Company, $3,500; to the Southern Investment Company, $7,500; to the estate of said Sidney Shepard, $7,500, or an aggregate amount of $88,797.80.

2nd. And your orator further shows unto your honor, that on said 8th day of August, 1904, said defendant, the Wylly-Gabbett Company, being thereunto duly authorized, and by its president and secretary, and under its corporate seal, and being the owner of, or having an interest in, by lease, contract or otherwise, and being in possession of, the real and personal property hereinafter described, did, in order to secure the payment of the principal and interest of each of said promissory notes, and of all such other loans, advances or moneys as might or should thereafter be loaned to said defendant, by your orator, or the beneficiaries thereunder, the total amount of such indebtedness, including the promissory notes above mentioned,

not to exceed one hundred thousand dollars, make, execute and deliver unto your orator a certain deed or indenture of trust or mortgage, which said original mortgage was thereafter, on the 10th day of August, 1904, filed in the office of the clerk of the circuit court for Levy county, Florida, and recorded in book 'K,' of mortgages, at page 709, and is hereunto attached, and made a part of this bill, and reference to same is prayed, as if the same were herein fully and at length set forth; wherein and whereby said defendant granted and conveyed unto your orator and one C. L. Heller, as trustees, and their lawful successors and assigns, all and singular the properties of the company, real, personal and mixed, lying and being in the county of Levy, in the state of Florida, in the county of Levy, including the following, to wit:

A.   All those certain tracts or parcels of land situate, lying and being in the county of Levy state of Florida, containing 41,319.05 acres, more or less, together with the improvements, rights, members and appurtenances thereunto belonging or in any wise appertaining, conveyed by the Savannah Trust Company, trustee to the Wylly-Gabbett Company, by deed dated February 16th, 1903, and recorded in the office of the clerk of the circuit court in and for the county of Levy and state of Florida, in book 'U,' pages 686 et seq., to which deed, so recorded, reference is hereby made for full description, excepting and reserving, however, the right of the McKinnon-Young Company, a corporation, and its successors and assigns, to turpentine privileges in the pine timber upon said lands, more particularly stated and set forth in deed from McKinnon-Young Company to Wylly & Gabbett, dated January 19th, 1903, and recorded in the office of the clerk of

the circuit court in and for the county of Levy and state of Florida, in book 'U,' pages 686 *et seq.*, to which deed so recorded reference is hereby made for full description, excepting and reserving, however, the right of the McKinnon-Young Company, a corporation, and its successors and assigns, to turpentine priv'leges in the pine timber upon said lands, more particularly stated and set forth in deed from McKinnon-Young Company to Wylly & Gabbett, dated January 19th, 1903, covering said lands, to which deed, and the record thereof in book 'U,' pages 676 *et seq.* of records of Levy county, Florida, reference is hereby made.

B.  Also the real properties conveyed to the Wylly-Gabbett Company by Jonathan B. Bunce, surviving trustee, by deed dated March 7th, 1903, recorded in book 'U,' page 793; and by McKinnon-Young Company, by deed March 6th, 1903, as recorded in book 'U,' page 715; and by William D. Mooney, by deed dated July 20th, 1903, as recorded in book 'V,' page 16 *et seq.*; reference hereby made being to deeds books of public records of Levy county, Florida, to which said deeds, as recorded, reference is made for full description.

C.  Also all the properties of every nature and character described in and covered by the contract and mortgages between B. B. Stokes and Brother, and the defendant company dated March 10th, 1903, and July 24th 1903, and recorded respectively in book 'K,' of mortgages, pages 508 to 520, inclusive, and pages 534 *et seq.*, in the office of the clerk of the circuit court in and for said county of Levy and state of Florida, which properties were conveyed by said B. B. Stokes and Brother to the defendant company by deed dated the 27th day of July A. D. 1904; to which

contract and mortgages recorded as aforesaid, and to which deed, as recorded, reference is hereby made for full description.

D.    Also all of the properties of every nature and character described in and covered by the contract and mortgages between Coleman & Burch and the defendant company, dated April 9th, 1903, and July 25th, 1903, and recorded respectively in book 'K,' of mortgages, pages 520 to 532, inclusive, and pages 538 to 540, incluisve, in the office of the clerk of the circuit court in and for said county of Levy, State of Florida, which properties were conveyed by said Coleman & Burch to the defendant company by deed dated the 27th day of July, A. D. 1904, to which contract and mortgages, recorded as aforesaid, and to which deed as recorded, reference is hereby made for full description.

E.    Also all of the properties of every nature and character deeded and conveyed by the contract and mortgages between Statesboro Lumber Company and the defendant company dated March 10, 1903, and July 25th 1903, and recorded respectively in book 'K,' of mortgages, pages 497 to    , inclusive, and pages 536 to 538, inclusive, in the office of the clerk of the circuit court in and for said county of Levy, state of Florida; which properties were conveyed by said Statesboro Lumber Company to the defendant company by deed dated the 27th day of July, A. D. 1903, to which contract and mortgages recorded as aforesaid, and to which deed, as recorded, reference is hereby made for full description.

F.    Also all the right, title and interest of the company in and to the steel rails, plates, bolts, nuts and spikes conditionally conveyed by Ruppard, Snedcker

& Company to Wylly-Gabbett Company, by instrument dated June 20th, 1903, and recorded in the office of the clerk of the circuit court of Levy county, Florida, in book 'K,' of mortgages, folios 543 to 54 , inclusive, to which said instrument, and the record thereof, reference is hereby made for full description of said properties; also all the right, title and interest of the defendant company in and to the steel rails, plates, bolts, nuts and spikes and other property conditionally conveyed by Ruppard, Snedeker & Company to Wylly-Gabbett Company, by instrument dated June 29th, 1903, and recorded in the office of the clerk of the circuit court of Levy county, Florida, in book 'K,' of mortgages, folies 547 to 551, inclusive, to which said instrument, and the record thereof, reference is hereby made for full description of said properties; also all the right, title and interest of the defendant company in and to the steel rails, plates, bars, spikes, bolts, switch-stands, points, frogs, and other properties, conditionally conveyed by Savannah & Statesboro Railway Company to Wylly-Gabbett Company, by instrument dated August 29th, 1903, and recorded in the office of the clerk of the court of Levy county, Florida, in book 'V,' of deeds, folios 480 to , inclusive, to which said instrument, and the record thereof, reference is hereby made for full description of said properties.

The description of the properties, real, personal and mixed, in the instruments herein referred to, are made part and parcel of said mortgage deed by the terms and provisions thereof, to the same extent and as completely as said descriptions were therein incorporated in detail; and reference is hereby expressly made and the

57—SC

898      SUPREME COURT OF FLORIDA.

Wylly-Gabbett Co. et al. v. Williams et al.—Statement of Case.

same are made a part of this bill of complaint; to the
same extent, and as completely as if the same were herein
set in detail.

3rd. And your orator further shows unto your honor,
that said properties were so mortgaged and conveyed
unto your orator and said C. L. Heller, as trustees, for
the equal and pro rata use, benefit and security of the
corporations and persons hereinbefore named, without
reference to any or either of them, and for the purpose
of securing said eight several promissory notes, dated the
eighth day of August, 1904, aggregating the sum of $88,-
797.80, and interest thereon; and that it was provided
in said mortgage, that the trustees should certify and
deliver unto such persons or corporations as should be
designated by the defendant company, said promissory
notes aggregating the sum of $88,798.80, and that the
Trustees did thereafter, at the request of the defendant
company, certify the said eight promissory notes herein
before mentioned and deliver the same to the said several
payees  therein named, who became and are still the real
owners thereof.

And your orator shows unto your honor, that said
C. L. Heller has resigned the trust conferred upon him
by said mortgage deed, and that your orator is the sole
trustee; and that the trustee is authorized to bring this
suit, for the benefit of, and at the request of all the ben-
eficiaries named in said deed of trust, or mortgage, and
does bring it for their benefit and at their request.

4th. Your orator shows unto your honor that the de-
fendant company in and by said mortgage deed, prom-
ised to pay each of said promissory notes so regularly
executed, certified and delivered, to the respective payees,

as and when the same shall fall due, and payable with interest according to their true tenor and effect; and that it would further keep such mortgaged properties free from any lien or encumbrances, which are, or which may become entitled to priority over this mortgage; and that in the event the defendant company shall fail to pay any of said charges or liens within thirty days after the same should become due and payable, that the trustee should have the right at his option to pay such charges, and thereupon the defendant company should pay the amount thereof to the trustee upon demand, with interest at the rate of seven per cent. per annum from the time the same are paid by the trustee, and that any such payments by the trustee shall constitute a part of the indebtedness hereby secured.

And that in case said company should default in the payment of either principal or interest, as the same should become due and payable to either of the beneficiaries, named in said deed of trust, according to the tenor and effect of said eight promissory notes, and such default shall continue for thirty days after notice thereof shall have been given by the trustee to said company in writing, or in case said defendant company shall fail to fully keep and perform any or either of the covenants by it herein undertaken to be performed, and such failure continue for a period of thirty days, after written notice thereof by the trustee, then and in either of such cases, said mortgage should be subject to foreclosure by the trustee as for condition broken, in which event upon the commencement of the proceedings for foreclosure, whether at law or in equity, the trustee shall be entitled to the appointment of a receiver without further notice to

900    SUPREME COURT OF FLORIDA.

Wylly-Gabbett Co. et al. v. Williams et al.—Statement of Case.

the defendant company and should be entitled to the possession of all the properties conveyed by this mortgage. And that in case of a suit or action commenced in any court to recover any sum hereby secured, the reasonable fees of the attorney or attorneys representing the trustee or beneficiaries hereunder in such action shall be taxed as a part of the cost therein and included in any judgment rendered, and shall be deemed due and payable at the time of the commencement of such suit.

5th. Your orator further shows unto your honor, that no part of the principal of said promissory notes has ever been paid unto the said several payees thereof, or to your orator, or to any agents, attorneys or other persons for them, by said defendant, or its agents, attorneys or other persons whomsoever, although the principal of said promissory notes has long since been due and payable; that the same remains due and unpaid and owing unto the said several payees thereof, although your orator, as such trustee, has much more than thirty days prior to filing this suit, given written notice and demand for payment thereof to the defendant; and that the interest, divers considerable amounts of money, is due, owing and unpaid on each of said notes for a period commencing the 8th day of February, 1905, and that such default in the payment of interest by the defendant company has continued more than thirty days after written notice and demand for payment made by your orator, as trustee, upon the defendant company.

That said defendant has allowed the sum of $3,800.00 to become due its employees, which said sum was a lien upon said properties, entitled to priority over the mortgage of your orator, and that your orator did on, to wit,

the 2nd day of May, 1905, with the consent of all the benenficiaries named thereunder, and at the instance and request of the defendant company, and with the agreement of the defendant company, that such amount should be loaned to it under the terms and provisions of the mortgage, and secured thereby, pay said sum of $3,800.00 to various creditors of the defendant company for the purpose of protecting the lien of his said mortgage.

That said mortgage is subject to foreclosure and that this trustee has been requested by all the beneficiaries thereof to foreclose the same, and that your orator desires a receiver of said properties, and has been compelled to employ attorneys to bring this suit and prays that their reasonable fees may be included in any judgment or decree rendered herein.

6th. That your orator is entitled to a receiver by the terms of the mortgage, and for various other good reasons, to wit: The defendant company is insolvent and that its said saw mill, which constitutes the principal part of its business, has shut down and ceased operations, owing to lack of funds on the part of the defendant to pay its laborers and buy material; that there is no one in responsible charge of the property, which is in a precarious condition and is rapidly deteriorating in value, and needs to be cared for and preserved; that the defendant company owns a large number of mules which are included in the mortgage and has no money to pay for their feed and care, which must at once be attended to by your orator, otherwise the interest of the mortgage will be seriously injured; that mechanics' and other liens have accrued and are still accruing against the property; that the lumber in the possession of the defendant will deterio-

rate in value and that your orator desires to sell the same at once, and apply the proceeds thereof upon said mortgage indebtedness; and the security of the creditors under said mortgage will be impaired unless a receiver of this court is appointed to take possession of said property and sell the perishable property.

7th. To the end that the defendant shall be required to answer this bill, and thereof that an account may be taken under the direction of the court of the amounts due your orator, and account of said mortgage indebtedness for principal, interest, loans, costs of suit, and attorneys' fees, and that the defendant may be decreed to pay the same unto your orator within a short time to be fixed by the court and that in default of such payment, that such mortgaged properties may be sold by an officer, and under the direction of this honorable court, and the proceeds applied, *first,* to defray the costs, charges and expenses of this suit and of the officers of this court, including the receiver herein prayed for, and the reasonable fees of your orator's solicitors; and, *second,* to the amount found to be due your orator for principal, interest and moneys advanced or paid for liens; *third,* the balance, if any, may be paid over to the defendant; and that by such decree and sale that the defendant, and all persons claiming by, through or under it, since the institution of this suit, may be forever barred and foreclosed of all right, title and interest and equity of redemption in and to said mortgaged premises and every part and parcel thereof, and that in case premises do not sell for enough to satisy said decree, that your orator may have a deficiency decree for the balance; and that a receiver may be appointed by this honorable court to take possession of

said properties and collect the rents and profits thereof, and the proceeds of any sales thereof which may be ordered by this honorable court, and apply all such moneys as may be decreed by the court, and that your orator may have such other, further and general relief as may be agreeable to equity and good conscience, and to your honor shall seem meet.

May it please your honor to grant unto your orator the state's most gracious writ of subpoena in chancery, directed to said Wylly-Gabbett Company, a corporation under the laws of the State of Georgia, commanding it upon a day certain therein to be named and under a certain penalty to be and to appear before this honorable court, and thereafter to stand to, abide by and perform the further orders and decrees of this honorable court."

On the 5th day of May, 1905, the circuit judge made an order appointing the said George W. Owens to be receiver of the properties in said cause.

On the 12th day of June, 1905, the appellees herein as complainants below filed in the circuit court of Levy county Florida, the following bill in equity against the appellants, Wylly-Gabbett Company, a corporation, George W. Owens, Wylly Lumber Company, a corporation, and T. S. Wylly Jr., to wit:

"Your orators, H. A. Williams, of the county of Leon, L. C. Hester, of the county of Levy, and the Stringfellow & Doty Company, a corporation, created and doing business under the laws of the state of Florida, with its principal office in the city of Jacksonville, Florida, all of the state of Florida, in behalf of themselves and all other creditors of the said defendant the Wylly-Gabbett Company in like situation, who may come in and share the

expenses hereof, bring this their bill of complaint against Wylly-Gabbett Company, a corporation organized under the laws of the state of Georgia, the Wylly Lumber Company, a corporation organized under the laws of Florida, George W. Owens, a citizen of the state of Georgia, resident in Savannah, Georgia, and T. S. Wylly, Jr., who resides in the city of Jacksonville, Florida.

And thereupon your orators complain, and say:

1. That the said Wylly-Gabbett Company is a corporation organized under the laws of Georgia, doing business in the county of Levy, state of Florida, and is indebted to your orators, severally, as follows:

To your orator, H. A. Williams, for goods, wares and merchandise sold and delivered by him to said corporation in the months of May and June, A. D. 1904, in the sum of sixteen hundred and nine and thirty-hundredths ($1609.30) dollars; also for goods, wares and merchandise sold by said Williams to said corporation in the months of December, 1904, and January, February, March and April, 1905, in the sum of thirty-one hundred and eighty-one dollars; and for money loaned by said Williams to the corporation at its request, in the month of December, 1903, in the sum of eight hundred and fifty dollars, with the interest due on said several sums.

And to your orator, L. C. Hester, as follows: In the sum of forty-five hundred dollars, evidenced by nine several promissory notes, for five hundred dollars each, executed by the said corporation, May 14, 1904, to said L. C. Hester, payable severally, at intervals of ninety days, the first maturing, maturing ninety days after the execution thereof, and the last maturing, maturing twenty-seven months after the execution thereof, each with interest from date at the rate of seven per cent. per annum.

And to your orator, the Stringfellow & Doty Company, as follows; For goods, wares and merchandise sold and delivered by it to the said Wylly-Gabbett Company during the year 1904, in the sum of nine hundred and seventy-nine and five-hundredths dollars.

And the said several debts to your orators severally are, with the interest due thereon, each and every, in whole and in part, entirely unpaid; and for which your orators, severally, have no security.

2. And your orators further and severally show that each has brought a several suit on his said several matured demands against the said defendant, the said Wylly Gabbett Company, to recover, severally, said several matured claims, in the circuit court of said Levy county on the law side thereof, which said suits severally are now pending, and are now being prosecuted in said court by your several orators, severally.

3. On the eighth day of August, 1904, the said Wylly-Gabbett Company, was largely indebted, was without funds to meet its indebtedness and was then and there practically insolvent; and on that day executed and delivered to the trustees therein named a deed, in terms, conveying to them, the said trustees, under the conditions and provisions therein set up, the property therein described; that the said C. L. Heller named therein as one of the said trustees declined to accept the trust therein and thereby sought to be created and refused to qualify, under said deed, as such trustee; that the defendant, the said George W. Owens, did accept said trust so sought to be created, and has sought, as in the next paragraph shown, and is now seeking, to enforce the trust thereby and therein sought to be created, in favor

of the parties therein named as beneficiaries thereof. A copy of said deed is hereto attached, and made part hereof for the purpose merely of showing the date of the execution thereof, and the terms and conditions thereof, the recitals therein, and the provisions therein sought to be made, for those named as beneficiaries therein, as exhibit 'A.'

4. Your orators show that said George W. Owens, as such trustee filed his bill in this court on the 5th day of May, 1905, setting up the allegations therein set up and praying the relief therein prayed. And your orators append hereto, and make part hereof for the purpose of showing the claims therein set up, and the alleged facts upon which such claim is based, and upon which it is sought to be enforced, a copy of the bill so filed by said trustee Owens, in this court on the 5th day of May, 1905; and also a copy of an *ex parte* order, granted and entered by this court thereon, on the application of said trustee, Owens, merely for the purpose of showing the purpose sought by said bill and the alleged facts upon which the equity of said bill is sought to be maintained. Said copies are severally filed herewith as exhibits 'B' and 'C.'

5. And your orators further aver that said deed so executed August 8th, 1904, by said defendant, the Wylly-Gabbett Company, embraces, and purports to convey to said trustees, all the property, real and personal, then owned by the said defendant; that the same was executed with the intent to hinder, delay and defraud the creditors of said grantor, not therein provided for, and is fraudulent and void as to all then existing creditors of said defendant, who were not provided for therein; and, further, that if not fraudulent and void, because of the fraudulent

intent and purpose, then and thereby sought to be consummated, to delay, defeat and defraud the unsecured creditors of the said defendant, as your orators charge the fact to be—the provisions of said deed are such that if carried out according to their apparent and reasonable intent, they would operate as a fraud upon such unsecured creditors.

6. Your orators further show that, by the terms of said deed so executed August 8, 1904, the property so conveyed to said trustees is so conveyed for the purpose of securing to the certain creditors therein specifically named the debts therein specifically secured, and your orators further show that therein and thereby all the property, real and personal, of the said defendant corporation, the Wylly-Gabbett Company, was in fact conveyed and assigned to said trustees; and that said deed fails, as shown on the face thereof, to provide for an equal distribution of said property among the creditors of said grantor in equal proportion to their respective demands; and the said deed is condemned by the statute laws of Florida, section 2307, Revised Statutes, as not a valid deed.

7. Your orators further show that the said defendant Owens, so named as trustee in said deed of August 8, 1904, and who so accepted said appointment as such trustee, took no steps, by process of law, or otherwise, to dispossess the said defendant, the Wylly-Gabbett Company, of the properties so conveyed to him embraced in said deed, until the filing of said bill and the granting of said order; and further took no steps by process of law or otherwise to prevent the waste, destruction and appropriation, by the said defendant corporation and its offi-

·cers, of said properties, as hereinafter shown; and that, upon the filing of said order, the said Owens, and not before or otherwise, took possession and control of said properties, thereunder, and is now in possession thereof, thereunder. And your orators further show that the said Owens is the personal and special friend of the president of the said Wylly-Gabbett Company, and was in fact selected as such trustee because of such relation.

8. And your orators further show that after the execution of said deed of August 8, 1904, and continuously, down to the time said Owens took possession of said property as hereinbefore shown, the relations of the said defendant corporations, the Wylly-Gabbett Company and the Wylly-Lumber Company, was as herein shown, and that the profits which were owned by the said Wylly-Gabbett Company in the operation of its properties were continuously appropriated and absorbed by the said the Wylly-Lumber Company, as herein shown. And your orators show that such relation between the said defendant corporation was well known to said Owens, and the absorption and appropriation of said profits were in fact known, or could have been known, in the exercise by him of even a slight supervision of said properties and their operation, to the said Owens; and your orators show specifically that in the months of January, February, March and April, 1905, the said defendant, the Wylly-Gabbett Company, so in possession of the said mills of said company, cut from the lands of said company saw logs and cut them into timber, aggregating two million feet, and more, of the value of twenty thousand dollars—the net profits of which, estimating the total amount of the expenditure by said Wylly-Gabbett Company, re-

quired for its production, was at least ten thousand dollars. And your orators further show that said lumber, in fraud of the rights of the creditors of said company, was colorably sold to the said other defendant corporation, the said Wylly-Lumber Company. The said corporations, the said Wylly-Gabbett Company and the said Wylly-Lumber Company, both have offices in one and the same room in the city of Jacksonville, Florida; and the bookkeepers of said two corporations have their respective desks in the said one and the same room; that when the said Wylly-Lumber Company would receive, which it did almost from day to day, orders for lumber, its bookkeeper would then and there place orders for amounts and character of lumber sufficient to fill said orders so received by it with the said bookkeeper of the Wylly-Gabbett Company, who would then and there transmit said order of the Wylly-Lumber Company to the Wylly-Gabbet Company to its said mills so operated by it in Levy county. That, pursuant to a fraudulent arrangement and understanding between the said corporations, the president of both being then and there the said T. S. Wylly, Jr., defendant, whose identity supplied a president to the two corporations, and who then and there in respect of the receipt, transmission and filling said orders and the fixing of the price therefor, was the manager and actuary for both corporations—the price for said lumber, so colorably sold by the said Wylly-Gabbett Company to the said Wylly-Lumber Company was a price far below the current market price for lumber of the grade and quality, so then and there colorably sold; and, that therein and thereby, the said Wylly-Gabbett Company and its creditors were grossly defrauded of the profits,

which it should have realized from the cutting and sale of said timber, to the great advantage and profit of the said defendant, the said Wylly-Lumber Company; and your orators aver that the said Wylly-Lumber Company should be made to account herein for the profits so realized by it in said transactions.

9. Your orators further show that the said Wylly-Gabbett Company, after the execution of this deed of August 8, 1904, pursuant to a fraudulent purpose and intent to place them beyond the reach of its creditors, sold 32 of its mules, so embraced in the deed of August 8, 1904, to Lewis Patterson & Co., of Valdosta, Georgia, by whom they were removed from the state of Florida. Said mules were worth a large sum of money, the exact amount of which is unknown to your orators; that the proceeds of said sale, the said Wylly-Gabbett Company, has converted to its own use, or to that of its officers, in fraud of its creditors. And your orators aver that said Owens now alleges that such sale and removal were had with his consent.

10. Your orators further show that the said Wylly-Gabbett Company, since the said deed of August 8, 1904, was so executed, sold eight (8) of the mules embraced in said deed, together with two or three carts, to the Otter Creek Lumber Company, for the sum of sixteen hundred dollars, which sum the said Wylly-Gabbett Company, then and there received and appropriated and has failed to account for, either in its application to the debts of creditors or to the operation of its business.

11. Your orators further show that the said Wylly-Gabbett Company in like manner disposed of eighteen mules, another lot of mules, embraced in said deed, and

received therefor a large sum of money, for which it has in no wise accounted.

12. Your orators further show that the said Wylly-Gabbett Company, since the said deed of August 8, 1904, was so executed, has under a secret contract, sold cypress timber growing on the lands, embraced in said deed, and received therefor the sum of six thousand dollars or more, and has in no wise accounted for the same.

13. Since the said Owens took possession of said property, under said order, he has sold sixty-four mules and three horses, property of the said Wylly-Gabbett Company, embraced in said conyeyance to him of August 8, 1904, for the price and sum of six thousand and two hundred and eighty-eight and fifty-hundredths dollars, and should be held to account herein for said sum.

And your orators pray that the said deed executed August 8, 1904, by the defendant to the said Wylly-Gabbett Company, to the said Owens and Heller, be declared invalid, and the property sought to be conveyed thereby be adjudged subject to the several judgments severally to be recovered, when severally recovered, in favor of your orators severally in the circuit court of Levy county, in the several suits prosecuted by them, against the said Wylly-Gabbett Company; that the suit prosecuted by the said defendant, George W. Owens, in the bill so filed by him in this court against the said Wylly-Gabbett Company, to enforce the equities sought to be created in the said deed of August 8, 1904, and the sale of property therein prayed, be stayed by the order of this court until the validity of said deed as against the debts of your orators be judicially ascertained and declared herein; that the said defendant Owens be required to ac-

count to and with this court in respect to the several sums of money received by him in his capacity as grantee under said deed of August 8, 1904, which he has received or for which he is in any wise accountable, and equally and alike whether said moneys were received, or the moneys for which he is accountable were or should have been received before or after the filing of said bill so filed by him, or before or after the granting of said order of this court so appointing him as receiver; that the said defendant, the said Wylly-Lumber Company, and the said T. S. Wylly- Jr., be required to account to and with this court, in respect of their transactions whereby, as charged herein, the said Wylly-Lumber Company absorbed and appropriated the profits earned by the said Wylly-Gabbett Company in the operation of its properties after 8th day of August, 1904, and continuously down to the 5th day of May, 1905; and be decreed to pay the same into the registry of this court to abide its orders to be made herein; that the said defendant, the Wylly-Gabbett Company, and the said T. S. Wylly, Jr., be required to discover to this court, in an itemized statement thereof, what property, real or personal, of the property conveyed, or sought to be conveyed, in and by the deed so executed August 8th, 1904, has been disposed of by them or either of them, or within the knowledge of them, or either of them; and further to discover to this court, to whom it was severally sold and the purchase price thereof, and the disposition, in detail made of the proceeds of such sales; that the said T. S. Wylly, Jr., be required to pay into the registry of this court, to abide the orders of the court herein, the moneys, if any, so received by him, whether in his relation as the president

of said Wylly-Gabbett Company, or otherwise; that the said Wylly-Gabbett Company be decreed to pay to your orators the said several sums so to be ascertained by the said several judgments to be recovered in said pending suits against said defendant, the Wylly-Gabbett Company; that the property of the said Wylly-Gabbett Company conveyed or sought to be conveyed in and by said deed of August 8, 1904, be condemned to sale to pay the said several debts of your orators so reduced to judgments; that out of the moneys so paid into the registry of this court, and moneys the proceeds of said sale, there be paid the costs and expenses incurred by your orators in the prosecution of this suit, including reasonable solicitors' fees, the amount of which to be ascertained under direction of this court, for the services of their solicitors and counsel in the prosecution hereof, and the judgments so severally to be recovered by your orators severally in the several pending suits; and for such further or other relief as may consist with the case made by this bill to which they may be equitably entitled.

To the end, therefore, that the said Wylly-Gabbett Company, a corporation, George W. Owens, Wylly-Lumber Company, a corporation, and T. S. Wylly, Jr., may, if they can, show why your orators should not have the relief hereby prayed, and may upon ther several and corporal oaths, and according to the best and utmost of their several and respective knowledge, information and belief, full, true, direct and perfect answers make to each of the allegations of said bill, paragraph by paragraph, hereinbefore numbered and set forth; and further that said defendants may, upon their several respective, corporal oaths, and according to the best and utmost of their sev-

58—SC

eral and respective knowledge, remembrance, information and belief, full, true, direct and perfect answers make to each of the several interrogatories, hereinafter mentioned and set forth, as by the note hereunder written, they are respectively required to answer, that is to say:

1. Whether on the 8th day of August, 1904, the said defendant, the Wylly-Gabbett Company, had property, real or personal, or mixed, other than the property embraced in and purporting to be conveyed in and by the deed executed August 8, 1904, by the said defendant, the Wylly-Gabbett Company, to the said defendant, George W. Owens, and C. L. Heller?

2. If you say the said Wylly-Gabbett Company, when said deed was so executed, in fact had other property than was conveyed, or sought to be conveyed, in and by said deed, state fully in what such other property consisted, where it was, and the value thereof.

3. What property, real or personal, of the property so conveyed, or sought to be conveyed, in and by said deed of August 8, 1904, has been disposed of by you 'or within your knowledge—since said deed was executed; to whom was it sold or conveyed; what was the purchase price thereof; who received such purchase price, and state fully and in detail by whom, and when, and to what purpose, giving details, was the same appropriated or applied?

Note: The defendant, the Wylly-Gabbett Company, and the defendant, T. S. Wylly, Jr., are severally required to answer the said interrogatories, numbered 1, 2 and 3.

And may it please your honor to grant unto your ora-

tor's the state's most gracious writ of subpoena, directed to Wylly-Gabbett Company, a corporation, George W. Owens, Wylly-Lumber Company, a corporation, and T. S. Wylly, Jr., commanding them and each of them, upon a day certain and under a certain penalty therein to be specified, to be and appear before this honorable court to answer the premises and to stand to and abide such further order and direction as to this honorable court may seem just and equitable."

The defendants severally answered the last recited bill, denying all fraud, covin and collusion wherewith they were charged, and specifically denied that the instrument executed by the Wylly-Gabbett Company to the said George W. Owens, as trustee, was ever designed or intended by any of the parties thereto as an assignment for the benefit of creditors, or that the same was executed with any desire or intention of hindering, delaying or defeating or defrauding any of the creditors of the Wylly-Gabbett Company in the collection of their claims, but that the same was designed and intended, as is expressed on the face of the instrument itself, solely as a bona fide mortgage security to the creditors therein named for the debts therein expressed as being due to them respectively, and for future advances of money which they hoped to obtain, and provided to be secured in said instrument, from some one or all of said secured creditors or from others who might in future make such advances, such future advances, together with the past indebtedness secured thereby, not to exceed the sum of $100,000. The defendants also severally demurred to the said bill upon divers grounds, but these demurrers were overruled by the judge below.

On August 14th, 1905, the circuit judge made an order staying, restraining and enjoining the said George W. Owens from further proceeding with his suit for the foreclosure of said instrument until its validity could be determined, and in said order continued the said Owens as receiver of the properties, but appointed Edward W. Lane also as receiver, to take charge of the books and accounts of the Wylly-Gabbett Company and to collect the same, and of such other of the property of said company, if any, as was not covered by the said instrument to Owens as trustee.

On February 12th, 1906, pending the proceedings by agreement of all parties, complainants and defendants, and of the creditors and their respective attorneys, the following resolutions, and deed of the Wylly-Gabbett Company were filed and the judge thereon made the following order appointing E. W. Lane and J. N. C. Stockton as trustees to take charge of all the property involved, and to sell the same and to deposit the moneys received therefor subject to the order of the court: *viz.*: On the 12th day of February, 1906, the complainants filed an application for order directing the receivers, George W. Owens and E. W. Lane, to turn over the properties in their possession to E. W. Lane and John N. C. Stockton, trustees, under the deed of trust set forth in said application, in the words and figures following, to wit:

"In the Circuit Court, Eighth Judicial Circuit of Florida, in and for Levy County, in Chancery.

George W. Owens, Trustee, vs. Wylly-Gabbett Company.

H. A. Williams, et al. vs. Wylly-Gabbett Company et al.

To the Hon. J. T. Wills, Judge:

Come now the complainants in the above suits respect-

ively, and show unto your honor, that on the 5th day of January, A. D. 1906, the creditors of the Wylly-Gabbett Company, defendants in said suits, held a creditors' meeting in Jacksonville, Florida, at which meeting more than ninety-nine per cent of all such creditors were present in person, or were represented by proxy, or by attorneys at law, and they unanimously agreed, and entered into the arrangement as expressed in the resolution hereinafter set forth, in the deed copies herein blow, and since said meeting, the other creditors have acquisced in and ratified the arrangement as set forth in said resolution; that in pursuance of the purposes and arrangement expressed in said resolution the said Wylly-Gabbett Company has executed a deed of conveyance in fee simple absolute to E. W. Lane and John N. C. Stockton, their heirs and assigns, in trust, for the purposes expressed in said resolution and deed, as agreed upon at said meeting, as appears by the following, which is a true and correct copy of the said deed, embracing said resolution, to wit:

The State of Florida,
Levy County.

*Whereas,* a bill was, on the 12th day of June, 1905, exhibited in the chancery court of Levy county, Florida, by H. A. Williams and others, as creditors of the Wylly-Gabbett Company, a corporation organized under the laws of the state of Georgia, doing business in said county of Levy, in behalf of themselves and all other creditors in like situation, impleading as defendants the said corporation, also the Wylly Lumber Company, a corporation, also T. S. Wylly, Jr., and also George

W. Owens, the latter claiming to be trustee under and by virtue of a certain instrument of writing purporting to have been executed by the said corporation, the Wylly-Gabbett Company, on the 8th day of August, 1904, and recorded August 10th, 1904, in book 'K,' of mortgages, p. 709, of the public records of Levy county, Florida, by which said instrument, all the property of the said Wylly-Gabbett Company lying and being in the said county of Levy was in terms conveyed for the purposes therein set forth; and in which said bill, it was prayed, among other things, that said instrument be declared invalid as to said complaining creditors; and which said suit instituted by said bill is still pendng; and, whereas, on the 5th day of January, 1906, the creditors of the said the Wylly-Gabbett Company met in the city of Jacksonville, Florida, and adopted resolutions, in which for purposes of classification, merely, the creditors claiming under and by virtue of said instrument so recorded August 10, 1904, were styled 'secured' creditors, and all other creditors were styled 'unsecured' creditors, the following resolutions were adopted:

Jacksonville, Fla., Jan. 5, 1906.

Resolutions of creditors of the Wylly-Gabbett Company.

RESOLVED by the creditors of the Wylly-Gabbett Company here assembled, both secured and unsecured, that the following arrangement is hereby agreed to, to wit:

1. That two trustees be selected, one by the secured creditors and the other by the unsecured creditors, and that a consent order be taken in the litigation now pending in the circuit court of Levy county whereby the receivers be discharged and the property of the Wylly-Gab-

bett company be conveyed to said trustees to be held by them upon the following trusts:

2. That the trustees shall proceed at once to inventory the property, and as soon as this is done, they shall take immediate steps for the sale of all personal or other property which is deteriorating in value or is attended with expense in keeping.

3. That with respect to the real estate or timber lands, they are to take such time as may be necessary to get the lands before prospective purchasers and sell the same as soon as practicable consistent with good business judgment.

4. That the proceeds arising from the sale of said property be deposited in one or more banks in the city of Jacksonville, Florida, at usual savings interest, to be there held subject to an agreement between the secured and unsecured creditors as to its distribution, or if such an agreement cannot be reached, subject to the final order of the court distributing the same.

5. That the trustees be authorized to negotiate with the receivers and other parties having claims against the estate for expenses growing out of the litigation, and if the same be adjusted on terms which seem to the trustees reasonable, they are hereby authorized to make such adjustment, otherwise such matters shall be referred to the court for decision.

6. That the trustees be requested to obtain the consent of the Wylly-Gabbett Company to the action of the creditors as herein set forth and to procure their concurrence in such manner as may be necessary, but if said trustees find it impracticable to get the voluntary consent of the

Wylly-Gabbett Company, they are hereby authorized and directed to bring the matter to the attention of the court for the purpose of getting a decree which in substance will carry out the wishes of the creditors as herein expressed.

7. That the trustees shall be allowed not exceeding three years from the date hereof in which to dispose of said properties and to wind up said estate.

8. That the compensation of the trustees shall be two (2) per cent on the first twenty thousand dollars ($20,-000), three (3) per cent on the next sixty thousand dollars ($60,000), and five (5) per cent on all they may realize over eighty thousand dollars ($80,000). Besides this compensation they shall be entitled to all necessary and reasonable expenses.

9. That the secured creditors hereby appoint Mr. E. W. Lane as the trustee to represent their interst in said trust, and the unsecured creditors hereby appoint Mr. John N. C. Stockton as the trustee to represent their interest in said trust, and both of said trustees as appointed are hereby declared to be satisfactory to all the creditors.

10. That Mr. King, as representing the unsecured creditors, and Judge Owens, as representing the secured creditors, be requested to prepare the necessary legal papers to carry this agreement into effect;

Now, this deed, executed this the......day of January, 1906, by the said Wylly-Gabbett Company, a corporation organized and existing under the laws of the state of Georgia, and doing business in the state of Florida, party of the first part, to the said trustees, John N. C. Stock-

ton and E. W. Lane, of the county of Duval, state of Florida, parties of the second part, WITNESSETH:

That the said, the Wylly-Gabbett Company grants, bargains, sells, conveys and confirms, set over and deliver, unto the said John N. C. Stockton and E. W. Lane, their heirs and assigns in fee simple forever, *all* and *singular* the properties of the said the Wylly-Gabbett Company, real and personal, and mixed, situate, lying and being in the county of Levy and state of Florida, set forth and described in the granting clauses of said instrument so recorded August 10, 1904, in Book 'K' of the Book of Mortgages, p. 709, of the public records of Levy county, Florida, to the same extent and as fully as if the said description and setting forth were repeated herein:

To HAVE AND TO HOLD the said properties with their appurtennances, unto the said parties of the second part, for the purposes and to secure the objects expressed in said resolutions.

It is distinctly understood, and this deed is made upon the condition, that no right, legal or equitable, of any creditor or class of creditors of the Wylly-Gabbett. Company, as against the assets hereby conveyed, or as against the proceeds thereof when converted by the trustees herein provided, shall be in any wise prejudiced by this conveyance or the work of the trustees hereunder; furthermore, that and any overplus of assets remaining after payment of all creditors in full, and after payment of all expenses of administration and litigation, will be held in trust for the Wylly-Gabbett Company, its successors or assigns, and conveyed and delivered to it, its successors or assigns.

IN WITNESS WHEREOF, the party of the first part causes

its corporate name to be hereunto signed by its president
and its corporate seal to be hereto attached, duly attest-
ed by its secretary, this the......day of January, 1906.

Wylly-Gabbett Company,

*By T. S. Wylly, Jr.,* President.

Attest:                    (SEAL)

*C. A. Payne,* Secretary.

Signed, sealed and delivered in the presence of:

*E. J. Atwill.*

*George C. Heyward, Jr.,*

Notary Public, Chatham County, Georgia.

State of Georgia,

County of Chatham.

Personally appeared before me, the undersigned, a no-
tary public in and for the county aforesaid, T. S. Wylly,
Jr., president, and C. A. Payne, secretary pro. tem. of the
*Wylly-Gabbett Company,* to me well known to be the per-
sons who, in their respective official capacities as above
set forth, executed the foregoing instrument of writing,
and severally acknowledged the execution thereof to be
the free act and deed of the Wylly-Gabbett Company, for
the uses and purposes therein mentioned, and the same
was signed, sealed and delivered as therein set forth in
the presence of E. J. Attwill and George C. Heyward, who
then and there respectively subscribed the same as attest-
ing witnesses.

In witness whereof, I have hereunto set my hand and
affixed my official seal this 23rd day of January, A. D.
1906.

(Seal.)                    Geo. C. Heyward, Jr.

Notary Public.

My commission expires July 8th, 1907.

Which deed is now ready to be delivered to said parties, and to be properly recorded, upon the sanction of this honorable court:

Now, therefore, in view, and in consideration of the premises, application is respectfully made unto your honor for an order authorizing said transaction and conveyance, and directing said E. W. Lane and John N. C. Stockton, as trustees, to proceed forthwith to execute the purposes and terms of said resolution, and of said deed, and to sell and convey by proper deeds of conveyance, all properties set forth therein, and to that end that the receivers, George W. Owens and E. W. Lane, appointed herein, as receivers of the properties of the Wylly-Gabbett Company, be directed to turn over all properties in their hands, possession and control, as such, to the said E. W. Lane and John N. C. Stockton, as such trustees, and to take their receipts for each and every item of property so received from such receivers and file same with the records of the court herein, and that such receivers account to the court for each and every item of property, received by them, and not delivered to said trustees, and thereupon that such receivers be allowed proper compensation for their services as such receivers, to be determined as the court may deem meet and proper, the same to be taxed as costs in the suits in which they were appointed, respectively, upon the entry of final decree therein, and that said receivers be released and discharged from further duties in the premises.

Owen & Smith,

Of Counsel for Geo. W. Owens, Trustee.

A. W. Cockrell & Son, and A. H. King,

Sol. & Counsel for H. A. Williams, et al."

On the 12th day of February, 1906, the following order, dated February 9th, 1906, directing George W. Owens, and E. W. Lane to turn over to E. W. Lane and John N. C. Stockton, as trusteees, the property of the defendant, Wylly-Gabbett Company, which came into their possession, was filed and entered:

"In the Circuit Court Eighth Judicial Circuit of Florida, in and for Levy County. In Chancery.

H. A. Williams et al. vs. Wylly-Gabbett Company et al.

This cause coming on to be heard upon the application of the parties hereto, this day filed herein, and the court having duly considered said application, and it appearing to the satisfaction of the court, that the best interests of all parties in interest will be subserved thereby, it is therefore ordered that said application be and the same is hereby granted, and that the proceedings set forth in said petition are approved and authorized; and that George W. Owens and E. W. Lane turn over to E. W. Lane and John N. C. Stockton, the trusteess named in the resolution and deed, made a part of said application, all the property of the defendant Wylly-Gabbett Company, which came into their hands, possession and control, and take their respective receipts for same, and file such receipts herein as a part of the record herein; and that said George W. Owens, and E. W. Lane, respectively, account for all properties so received by them, and not delivered to said John N. C. Stockton and E. W. Lane, as trustees, to the satisfaction of the court, and that upon such delivery and accounting, the said George W. Owens and the said E. W. Lane, be discharged from all further duties.

And it is further ordered that the said John N. C. Stockton and E. W. Lane, as trustees, the grantees in the said deed, be and they are hereby authorized and directed to sell all of such said properties, conveyed to them in said deed, and to convey the same by all proper instruments and deeds of conveyance, pursuant to the terms and provisions of said resolution, and to receive and deposit all moneys arising from such sales and conveyances, and make distribution as shall be agreed to by all creditors, or as directed by further order of the court, as provided in said resolution.

Done this February 9th, 1906.

J. T. Wills, Judge."

A master was appointed to take and report the testimony in the cause. A voluminous amount of testimony was taken and reported, the cause was finally heard upon the bill, answers and testimony reported by the master, and upon such hearing the following decree was rendered on March 23rd, 1906.

"In the Circuit Court, Levy County, Florida. In Chancery.

H. A. Williams, J. C. Hester and Stringfellow Doty Company, a Corporation, Complainants, vs. Wylly-Gabbett Company, a corporation, George W. Owens, Wylly Lumber Company, a corporation, and T. S. Wylly, et al., Defendants.

This cause having been submitted by the respective parties for final decree upon the pleadings herein, and upon the report of the examiner, W. G. Powell, duly appointed herein, reporting the testimony taken by him, and having been argued by counsel orally and on briefs, and

the court being now fully advised in the premises, doth order, adjudge and decree:

1. That the equities of the complainants, suing for themselves and all others, creditors of the defendant corporation, the Wylly-Gabbett Company, in like situation, set up in the bill, are established by the evidence; that the Wylly-Gabbett Company was indebted to the complain-. ants severally, in the sums and at the times severally set up in complainants' bill; that the said complainants had, when the said bill was filed, severally brought suits upon their said several matured demands, which said several demands have been severally reduced to judgments severally in favor of said several complainants as shown by duly certified copies of said judgments filed with and reported by the examiner as shown in his report herein.

2. That of the 8th day of August, 1904, the said corporation, the said Wylly-Gabbett Company, was largely indebted and was without funds to meet its indebtedness and was then and there practically insolvent; that on the 8th day of August, 1904, the said Wylly-Gabbett Company executed to the trustees therein named a deed, in terms, conveying to them, the said trustees, under the conditions and provisions therein set forth, the property therein described; that said deed was duly recorded August 10, 1904, in mortgage book 'K,' page 709, of the public records of Levy county, Florida, a copy of which deed is attached to complainant's bill, as exhibit 'A;' that said deed embraces and purports to convey to said trustees, substantially all the property real and personal then owned by the said defendants, the Wylly-Gabbett Company; that by the terms and conditions of said deed, no provisions, whatever, enuring to the benefit of complain-

ants and other creditors in like situation, was made in or by said deed; that the operation and effect of said deed was to hinder and delay the said complainants and other creditors in like situation in the collection of their several claims, and that said deed is void.

3. That John N. C. Stockton and E. W. Lane, who were heretofore, upon the application then filed herein of the parties hereto, pursuant to an agreement of all the creditors of the said defendant, the Wylly-Gabbett Company, and the deed of said company, executed in accordance with said agreement, which agreement and deed are set forth at length in said application, conveying to the said John N. C. Stockton and E. W. Lane, all the properties, real and personal, of said Wylly-Gabbett Company, duly appointed by the decree of this court, enrolled herein February 12, 1906, to take charge of and sell said properties, proceed with all convenient speed to sell and convey to such persons and upon such terms as to them may seem expedient, said properties as directed in said decree, and the said trustees make their report to this court of their acts and doings in the premises, for its further orders and decree herein.

Done and ordered this March 23rd, 1906.

J. T. Wills, Judge.

From this final decree the appellants, defendants below, have taken their appeal to this court. The rendition of such decree is assigned as error.

*Cooper & Cooper* and *W. B. Owen,* for Appellants.

*A. W. Cockrell & Son* and *A. H. King,* for Appellees.

TAYLOR, J. (*after stating the facts*) :   From the answers of the defendants in this cause and the testimony reported we are of the opinion that the complainants have failed to make out any case of actual fraud or fraudulent intent in the execution of the mortgage by the Wylly-Gabbett Company to George W. Owens, as trustee for the creditors named therein; on the contrary, we think that the case shown by the testimony is that the said instrument was made by the grantors therein in good faith to secure a large and *bona fide* indebtedness due by them to their largest creditors, and for the purpose of raising additional funds with which to pay off their other unsecured creditors and to enable them to carry on their extensive lumber and saw-mill operations, with the object ultimately of paying all of their creditors in full.   This being true the propriety of the decree appealed from depends upon the proper solution of but two questions :

(A)   Is the instrument executed by the Wylly-Gabbett Company to George W. Owens, trustee, under the circumstances in which it was made, either in fact or in law an assignment for the benefit of the creditors of said Wylly-Gabbett Company, or is it to be held and treated merely as a mortgage security to the creditors named therein?

(B)   If it is construed to be merely a mortgage securing the claims of the creditors named therein, did the Wylly-Gabbett Company at the time and under the circumstances in which it was executed, even admitting that they were then in an insolvent condition, have the legal right thus to secure certain of their creditors, to

the exclusion of others, by a mortgage upon substantially all of their property?

Section 2307 of the Revised Statutes of Florida of 1892, provides that "no assignment made for the benefit of creditors shall be valid in this state, except the same shall be made in writing and shall provide for an equal distribution of all the assignor's real and personal property, except such as is exempted by law from forced sale, among the several creditors of the said assignor in equal proportion to their respective demands."

It is clear that if the instrument under discussion is construed to be in legal effect and assignment for the benefit of creditors then it is void under the provisions of this statute because of its attempted preference of certain creditor to the exclusion of others. The purposes of this statute being to prevent the preferment of any creditor in an assignment made by a debtor for the benefit of his creditors. But should this instrument be construed to be in legal effect an assignment for the benefit of creditors?

Section 2126 of the Code of Alabama of 1876, provides as follows: "Every general assignment, made by a debtor, by which a preference or priority of payment is given one or more creditors, over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally." The courts of Alabama in construing this statute held in effect that where the conveyance or transfer is of *all, or substantially all,* of the debtor's property, regardless of the *form* of the instrument by which it is made, whether in form of a mortgage or deed of trust, it falls within the purview

59—SC

of this statute, and will be held to be a general assign-
ment for the benefit of creditors, and that the prefer-
ences or priorities for which it provides will be held
to be nugatory, and will enure under the statute for the
benefit of all the creditors equally in proportion to their
respective claims, whether named in the instrument or
not.  Danner v. Brewer, 69 Ala. 191, and numerous Ala-
bama cases there cited.  And the decisions of that state
are to the effect that a debtor cannot in the presence of
their statute, secure a debt due to one creditor by a mort-
gage of *all* or substantially *all* of his property, to the
exclusion of other creditors.  That in such event the
mortgage will be construed and held to be a general as-
signment for the benefit of creditors, and, under the stat-
ute, will be held to enure to the benefit of all the cred-
itors generally in equal proportion.  Such also seems
to be the rule in North Carolina.  Bank v. Gilmer, 116
N. C. 684, 22 S. E. Rep. 2.  and in Ohio it is held that
under their statute where a mortgage is given by a debtor,
*in contemplation of insolvency,* it will be treated as an
assignment enuring to the benefit of all the creditors of
the mortgagor in equal proportion to their respective
claims. Pendery v. Allen, 50 Ohio St. 121.  This court
also in Armstrong, Cator & Co. v. Holland, 35 Fla. 160,
17 South. Rep. 366, has held that when an insolvent
debtor has determined upon an assignment of his prop-
erty under the statute for the benefit of his creditors,
and in pursuance of such determination first secures one
creditor by giving him a mortgage on property subject
to assignment, and then executes an assignment of the
same property for the benefit of all his creditors, both
instruments will be considered as parts of one trans-

action, and if an equal distribution of the property among all the creditors is not thereby secured, it will be in violation of the statute and a fraud upon creditors.

The contention of counsel for the appellees is that the same construction put upon their statute regulating assignments by the Alabama courts should be placed here upon our Florida statute on the same subject. That is, that where an insolvent debtor, or one in embarrassed circumstances, in good faith executes a mortgage upon substantially *all* of his property to secure the payment of a *bona fide* debt due to one or more of his creditors to the exclusion of others, that it is *ipso facto* an assignment for the benefit of his creditors with attempted preferences, and therefore void under out statute regulating assignments, and a fraud upon the unsecured creditors, whether the debtor at the time of its execution contemplated or had determined upon a general assignment for the benefit of his creditors or not, or whether he in good faith retained the full possession and control of the mortgaged property subsequently to the execution of the mortgage and with it or out of its proceeds in good faith hoped, expected and intended to work out, earn, realize and pay his indebtedness or not. We cannot follow the Alabama courts to this length, and for reasons founded in a sound public policy. If a man owning large and valuable properties, but embarrassed for available cash, cannot make a *bona fide* mortgage upon the *whole of it* for the purpose of raising ready cash to pay debts, to carry forward business enterprises, or perhaps, to put the property mortgaged in profit yielding shape, or salable condition, without being held to have made an absolute assignment of it for the benefit of

creditors; such a rule would in many instances block the wheels of honorable business endeavor, and would go far towards damming up the current of commercial enterprise in all the occupations, trades and callings of life. We do not think that our statute on the subject of assignments for the benefit of creditors was exacted with any such intention, or that its design was to impose a rule so harsh and detrimental to the business interests of the country. We agree with that greater weight of authority which holds that even an insolvent debtor may in good faith mortgage the whole of his property to secure the payment of one or more *bona fide* debts due to preferred creditors, and that such a mortgage is not void as being an assignment for the benefit of creditors attempting preferences, if at the time it is made the debtor in good faith *intended* it to be only a *security* for the debt therein provided for, and had no design or intention at the time of thereby absolutely surrendering the dominion, control and ownership over the property, or of making a general assignment for the benefit of his creditors generally. Fromme v. Jones, 13 Iowa 474; Hudson v. Eisenmayer & Elevator Co., 79 Tex. 401, 15 S. W. Rep. 385; Stiles v. Hill, Fontaine & Co., 62 Tex. 429; Laird v. Weiss, 85 Tex. 93, 23 S. W. Rep. 864; Sandwich Manufg. v. Max, 5 South. Dak. 125, 58 N. W. Rep. 14, 24 L. R. A. 524; Warner v. Littlefield, 89 Mich. 329, 50 N. W. Rep. 721; Collins v. Sanger, 8 Tex. Civ. App. 69, 27 S. W. Rep. 500; Ingram v. Osborn, 70 Wis. 184, 35 N. W. Rep. 304; Bennett v. Wolverton, 24 Kan. 284. In Robson v. Tomplinson, 54 Ark. 229, 15 S. W. Rep. 456, it is said: "The instrument relied upon * * * is in form a mortgage, and not an assignment for the benefit of cred-

itors. The presumption, until overcome by proof, is that the parties intended it to have the effect the law gives to a mortgage; that is, that it should stand as security for a debt. The fact that it provides that the mortgagor should surrender immediate possession to the trustee for the mortgagee does not convert it into an assignment. To accomplish that result, it must be shown that it was the intention of the parties that the debtor should be divested, not only of his control over the property, but also of his title. * * * If the equity of redemption remains in the debtor, his title is not divested, and an absolute appropriation of the property is not made. In arriving at the intent of the parties, therefore, the question is not whether the debtor intended to avail himself of the equity of redemption by payment of the debt, but, was it the intention to reserve the equity? If so the instrument is a mortgage, and not an assignment." To the same effect is Warner v. Littlefield, 89 Mich. 329, 50 N. W. Rep. 721, *supra;* Crow v. Beardsley, 68 Mo. 435; Lawrence v. Neff, 41 Cal. 566. See especially the opinion of Mr. Justice Field in Danna v. Stanfords and Deitz, 10 Cal. 269; Griffin v. Rogers, 38 Pa. St. 382. See the very similar case to the one under discussion of Austin v. Sprague Manufacturing Co., 14 R. I. 464. In the case of Walker v. Rose, 150 Ill. 50, 36 N. E. Rep. 986, it is said: "An absolute conveyance made directly to the creditor in payment, or any form of lien given as security for the payment, of a *bona fide* debt, though having the effect to give the creditor a preference, is not an assignment for the benefit of creditors, within the meaning of the statute. Wherever such instruments have been held void under section 13 of the assignment act, it has been

upon the ground that, having been made in contemplation of an assignment in trust, afterward actually executed, they were deemed a part of it. The statute does not contemplate a constructive assignment." Such was the case in Armstrong, Cator & Co. v. Holland, *supra*. It is said further in the Illinois case, *supra*: "A debtor, solvent or insolvent, notwithstanding the statute relating to voluntary assignments, may lawfully transfer any part or the whole of his property in payment, or incumber it by mortgage, deed of trust in the nature of a mortgage, judgment confessed, or pledge, as security for the payment of such debts preferred. By selling or mortgaging his property directly to his creditors, the debtor exercises a clear, legal right. His right, by such means, to prefer some creditors to others, is not affected by the statute." Preston v. Spaulding, 120 Ill. 208, 10 N. E. Rep. 903; Verner v. McGhee, 26 S. C. 248, 2 S. E. Rep. 113; Magovern v. Richard, 27 S. C. 272, 3 S. E. Rep. 340; Cribb v. Hibbard, Spencer, Bartlett & Co., 77 Wis. 199, 46 N. W. Rep. 168; McBroom & Wood's Appeal, 44 Pa. St. 92; Jaffrey v. Mathews, 120 Mo. 317, 25 S. W. Rep. 187; Gage v. Chesebro, 49 Wis. 486, 5 N. W. Rep. 881; Campbell v. Colorado Coal & Iron Co., 9 Colo. 60, 10 Pac. Rep. 248; May v. Tenney, 148 U. S. 60, 13 Sup. Ct. Rep. 491; Younkin v. Collier, 47 Fed. Rep. 571; Watterman v. Silverberg, 67 Tex. 100, 2 S. W. Rep. 578; Southern White Lead Co. v. Haas. 73 Iowa 399, 33 N. W. Rep. 657; 35 N. W. Rep. 494. In the case of Caldwell's Bank v. Crittenden, 66 Iowa 237, 23 N. W. Rep. 646, the test as to when an instrument is to be considered a mortgage or as an assignment for the benefit of creditors is tersely laid down as follows: "Whether or not a disposition of property is

to be regarded as an assignment for the benefit of cred-
itors, or as a mortgage, is to be determined from the
intention of the parties.  If the conveyance is to a trustee,
and the debtor intends to divest himself, not only of the
title to the property, but of all control over it—if it is
intended as an absolute conveyance of all his prop-
erty, and is made for the purpose of securing a distri-
bution of its proceeds among his creditors, or a portion
of them—in legal effect it is an assignment for the benefit
of creditors, no matter what name or designation the
parties may give it.  On the other hand, if the intention
of the debtor is merely to secure his debt to one or more
of his creditors, and the conveyance is not intended as
an absolute disposition of his property, but he reserves
to himself a right therein, the conveyancce will be treated
as a mortgage, even though the debtor is insolvent at
the time, and it covers all his property, and but a por-
tion of his debts are secured by it." Kohn v. Clement,
58 Iowa 589, 12 N. W. Rep. 550; Farwell v. Howard, 26
Iowa 381.  If, however, the debtor, in contemplation of
his insolvency, and with a design to evade or defeat the
statute forbidding preferences in volutary assignments
for the benefit of creditors, executes any manner or form
of instrument to effect such forbidden preference, there-
by making an absolute disposition of his property, it will
be held to be a fraud upon the rest of his creditors and
void, as was held in Armstrong, Cator & Co. v. Holland,
*supra*.

Section 1981 Florida Revised Statutes of 1892, declares
that: "All deeds of conveyance, obligations conditional
or defeasible, bills of sale or other instruments of writing
conveying or selling property, either real or personal,

936        SUPREME COURT OF FLORIDA.

Wylly-Gabbett Co. et al. v. Williams et al.—Opinion of Court.

for the purpose, or with the intention of securing the payment of money, whether such instruments be from the debtor· to the creditor, or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages." Even without this explicit statute on the subject, we think it is clear on its face that the instrument under discussion executed by the Wylly-Gabbett Company to George W. Owens is a mortgage, but in the presence of the quoted statute there can be no doubt that it is a mortgage, giving only a specific lien on the property therin described, even though it has no express defeasance clause. In the case of Cooper v. Brock, 41 Mich. 488, 2 N. W. Rep. 660, it is held that: "An instrument must be considered a mortgage if, taken alone or in connection with surrounding facts, it appears to have been given as a security; the mere absence of terms of defeasance cannot determine whether it is a mortgage or not." This utterance of the Michigan court is particularly applicable in Florida under our statute quoted above as to what shall be deemed to be mortgages. This statute declares that all "deeds, obligations conditions · or defeasible, bills of sale or other instruments of writing conveying or selling property either real or personal for the purpose or with the intention of securing the payment of money * * * shall be deemed and held mortgages." A deed or bill of sale has no clause or terms of defeasance, and yet if they can be shown to have been given for the purpose or with the intention of securing the payment of money they must, under this statute, be

deemed and held to be mortgages, and this purpose or intention in their execution may be established by parol, as has been repeatedly held in this court. Chaires v. Brady, 10 Fla. 133; Shear v. Robinson; 18 Fla. 379; Franklin v. Ayer, 22 Fla. 654; Walls v. Endel, 20 Fla. 86; First Nat. Bank of Fla. v. Ashmead, 23 Fla. 379; National Bank of Texas v. Lovenburg, 63 Tex. 506; DeBartlett v. DeWilson, 52 Fla. 497, 42 South. Rep. 189.

There is nothing in the proofs to indicate otherwise than that this mortgage was executed in good faith for the honest purpose of securing the creditors therein provided for in the payment of *bona fide debts* then due them and to secure them in further advances of money then made ,or thereafter to be made, by them to the mortgagors to enable them to carry forward their saw mill and lumber operations, and to enable them to pay off other unsecured debts. Neither do we think that there is anything in the proofs, or on the face of the mortgage itself, to indicate that at the time of its execution it was done with any intention, wish or design to hinder, delay, defeat or defraud any other creditor in the collection of any claim against the mortgagors. Neither do we think from the proofs that the mortgagors had any intention or design at the time of the execution of this mortgage of making an absolute disposition of their property for the benefit of either the secured creditors or of their creditors generally, or of evading or defeating the statute forbidding preferences in a general assignment for the benefit of creditors. On the contrary the proofs show that for nine months after the execution of the mortgage they retained possession and control of the mortgaged properties and endeavored during that time to

work with and out of it the funds with which to pay
their debts. The mortgage contains a clause attempting
to empower the trustee therein named to take possession
of the property and to sell it, &c., upon any default in the
payment of interest, principal, &c. Under our statute sec-
tion 1982 of 1892, which provides as follows: "A mortgage
shall be held to be a specific lien on the property therein
described, and not a conveyance of the legal title or of
the right of possession," this provision in the mortgage
is nugatory, but does not vitiate the mortgage, and should
be disregarded. Thompson v. Marshall, 21 Ore. 171, 27
Pac. Rep. 957. The mortgage contains a provision au-
thorizing the mortgagor "at any time before default,
without the consent of the trustee, to sell or otherwise
dispose of any of the mortgaged property which may
become worn or damaged or otherwise unsuitable to be
used in the conduct of its business, provided that property
equivalent in value to the property thus sold or disposed
of be substituted therefor, which substituted property
shall immediately become subject to the lien and pro-
visions of this instrument; provided that the company
shall not, without the trustee's consent, sell or dispose
of at any one time property exceeding in value the sum
of $1,000." It is contended for the appellees that this
provision vitiates the mortgage, and renders it fraudulent
and void as to creditors.

It must be borne in mind that the business of this cor-
porate mortgagor was that of manufacturing lumber
with saw mills and other machinery from the timber on
a large area of land, and in connection therewith oper-
ating a railroad for transporting both logs and manufac-
tured lumber, and that the mortgage covered all of this

property besides numerous mules, horses, timber carts and other appliances used in the conduct of such an enterprise. All of this property including the live stock, from the very nature of the business, was subject to wear and tear and to become useless in the business, and constantly required replacement. Under these circumstances, the supreme court of Maryland in the case of Butler v. Rahm, 46 Md. 541, aptly answers this contention of the appellees in the following language: "However suspicious the power here given might be in the case of a mortgage of ordinary goods, the very nature of its business, the means and power necessary to keep it up, the wear and tear of its iron, ties and rolling stock, the constant necessity of replacing injured or wornout appurtenances with new, forbade the interference of a fraudulent purpose which might arise from such a provision under other circumstances." Coopers & Clark v. Wolf, 15 Ohio St. 523.

From the authorities cited our conclusion is that the instrument in question is not an assignment for the benefit of creditors either in fact or in its legal effect, but that it is a mortgage merely, and that the corporate mortgagor had the power and right to make it under the circumstances in which it appears to have been made, and that it has not been shown by the proofs to be either an actual or constructive fraud upon the other creditors of the mortgagor not provided for therein, and that it is a valid subsisting lien upon all of the properties covered thereby, having legal priority over the claims of the other creditors, appellees herein, not provided for therein. It follows that the decree of the court below appealed from herein must be and is hereby reversed, with directions

to enter a decree dismissing the bill of complaint of the appellees, and making such disposition of the property involved or of its proceeds as that it shall be applied to the payment of the respective claims specifically secured by said mortgage *pro rata* in proportion to their respective amounts, until such secured claims are paid in full. The costs of this appeal to be taxed against the appellees.

HOCKER and PARKHILL concur;

SHACKLEFORD, C. J., and WHITFIELD, J., concur in the opinion.

COCKRELL, J., disqualified.